RUSS v. TELFENER.

(Circuit Court, W. D. Texas, Austin Division. **July 11, 1893.**)

No. 1,918.

1. **Principal and Agent — Unauthorized Acts of Agent — Ratification by Principal.**
Ratification by a principal of an unauthorized contract made by his agent relates back to the beginning of the transaction, and, when deliberately made, with a knowledge of the circumstances, cannot be recalled.

2. **Same—Limitation of Agent's Authority—Private Instructions.**
Private instructions limiting the authority of an agent will not avoid the principal's liability for acts done by the agent in violation thereof, when the other party to the transaction had no reason to know, and no actual knowledge, of such limitation.

3. **Same—Execution of Contract by Agent—Evidence—Burden of Proof.**
The denial by defendant that an alleged contract was executed by his duly-authorized agent throws upon plaintiff the burden of proving by a preponderance of evidence the legal and binding execution thereof.

4. **Vendor and Purchaser—Damages for Breach of Contract—Collateral Contract.**
In an action for breach of a contract for the sale of lands by plaintiff he cannot recover any damages for the breach of a collateral contract whereby, for a consideration named, he has agreed to have the lands surveyed and the field notes returned, as required by law.

5. **Damages—Measure of—Breach of Contract—Sale of Right in State Lands.**
The measure of damages for breach of a contract assigning a right to purchase state lands, which has been acquired under Act Tex. July 14, 1879, is the difference between the price agreed upon by the parties and the market price of the right at the time of the breach.

6. **Public Lands—Sale of State Lands—Texas Statute—Public Surveyor's Decision—Conclusiveness.**
Under Act Tex. July 14, 1879, providing for the sale of certain lands owned by the state, the decision of the public surveyor is conclusive, in the absence of evidence to the contrary, on the question whether the purchaser is a "responsible party," within the meaning of section 3 of the act.

7. **Same—Right to Purchase.**
The right to purchase acquired by application to the public surveyor, as provided in Act Tex. July 14, 1879, providing for the sale of certain state lands, is assignable.

At Law. Action by George W. Russ against Joseph Telfener for breach of a contract for the purchase of certain rights acquired by plaintiff in state lands. Judgment was given for plaintiff, but on writ of error this was reversed by the supreme court. 12 Sup. Ct. Rep. 930, 145 U. S. 522. The cause is now up for a second trial.

Hancock & Shelley and Miller & Fiset, for plaintiff.
J. L. Peeler, for defendant.

MAXEY, District Judge, (charging jury.) Plaintiff brings his suit to recover damages because of alleged breach of contract on part of defendant. In his pleadings the plaintiff sets up two contracts which, he claims, were executed by the defendant. The first is known as "Exhibit M," and the second as "Exhibit N." Both were executed on the same day, to wit, the 1st day of November, 1882, and both were signed by the same parties. The plaintiff signs his own name in person, and the name of defendant is signed as follows: "J. Telfener, by C. Baccarisse, Ag't." The defendant denies that he executed the contracts in person, and further denies that Baccarisse had authority to execute them in his behalf, and hence he claims that they are not binding upon him.

The first question, therefore, presented for your consideration, is whether the contracts, particularly the one known as "Exhibit M," were executed in such manner as to be valid and binding upon the defendant. No formal power of attorney executed by the defendant has been introduced in evidence, expressly conferring authority upon Baccarisse to execute the contracts in question. You must therefore look to all the facts and circumstances in evidence, apart from the declarations of those professing to act as agents, to determine whether Baccarisse was duly authorized to execute the contracts declared upon. If, from consideration of the evidence, you conclude that Baccarisse had authority, direct from the defendant, to execute the contract in his behalf, then it would be binding upon the defendant. It would also be binding upon the defendant if Westcott, with authority from, and knowledge and consent of, defendant, empowered Baccarisse to execute it. But if Baccarisse was neither empowered directly by the defendant, nor by Westcott, with authority from and knowledge and consent of defendant, to execute the contract, then it would not be binding upon the defendant, unless he ratified the same, as hereinafter stated. If Baccarisse had no authority from defendant or Westcott, as above stated, to execute the contract, then it would not be binding upon the defendant, unless he, having full knowledge of the terms of the agreement and the material facts and circumstances attending its execution, acquiesced in and recognized the same as his contract, in which event he would be held to have ratified it, and it would be binding upon him.

To make it binding upon him in such case, you observe, he must have ratified the contract with full knowledge of its terms and of the material facts and circumstances attending its execution. If he did so ratify it, then it would be binding upon him as though he had given authority to make the contract before the same was executed. It is a familiar maxim that ratification has a retroactive efficacy, and relates back to the inception of the transaction; and, when deliberately made with a knowledge of the circumstances, as before stated, cannot be revoked or recalled.

If you find from the evidence that Baccarisse had authority from the defendant, or from Westcott, with the defendant's assent, approval, and knowledge, to contract with individuals gen-

erally for the purpose of procuring lands under the act of the legislature of 1879, by filing upon them and having the same surveyed, then you are instructed that the acts of Baccarisse were binding upon the defendant, as such acts came within the scope of his authority, and defendant cannot avoid liability thus created, notwithstanding he might have given private instructions to Baccarisse not to purchase without referring the matter to him for his ratification, provided that such instructions were not communicated to and known by the plaintiff. If, however, the plaintiff knew that Baccarisse was instructed not to close any trade without first referring the matter to the defendant, then the plaintiff could not enforce a contract so made with Baccarisse without complying with such restrictions upon his authority.

To illustrate, (and in the illustration I quote the language of my predecessor in charging the jury upon a former occasion:)

"Suppose I send out agents to procure lands for me by purchase, or otherwise. I give my agents certain specific directions to govern them, and then say to them, 'You must, before closing the trade, submit the trade to me for my approval.' My agents go out and contract with persons, and do close a trade, but without referring the same to me before closing. The agent having pursued the ordinary mode for procuring lands, and the person with whom he deals not being advised of the restrictions by me placed upon my agent, but deals with him in good faith, and upon that faith changes his relation to the property, I am bound, because the agent acted within the general scope of his authority," and because the third persons are not affected by private instructions given to the agent which are not made known to them. "This is, of course, to be taken with the qualification that if the person dealing with the agent knew of the instruction which was a limitation upon his right to act, and made a contract in violation of that instruction, he cannot enforce it against me."

The defendant having denied under oath the execution of the contract by duly-authorized agent, the burden is upon the plaintiff to prove, by a preponderance of the evidence, that the contract was executed in such manner as to be binding upon the defendant.

If, upon a consideration of all the facts and circumstances in evidence, taken in connection with the foregoing charge, you reach the conclusion that the contract is not binding upon the defendant, then you will proceed no further except simply to return a verdict in his favor. If, however, your finding upon that issue be in favor of the plaintiff, you will then proceed to the consideration of other issues involved in the cause.

Plaintiff's applications for the purchase of the lands involved in this controversy were filed, respectively, on the 4th and 5th days of October, 1882. On the 1st day of November following, as already stated, the contract designated "Exhibit M" was executed. This contract recites that plaintiff had, in due form, made application for the purchase of about 1,000,000 acres of land, more or less, in El Paso county, in accordance with an act of the legislature of Texas approved July 14, 1879; that defendant was desirous of purchasing from plaintiff all his rights, titles, and interest under and by reason of such application, provided it should appear that such application had been regularly made and filed

in such manner as would, under the terms of said law, entitle plaintiff to become the purchaser of said lands from the state of Texas; and in such case defendant agreed and promised to pay plaintiff, as consideration of his sale, transfer, and assignment of all his said rights, titles, and interest, 25 cents per acre for each and every acre of land covered by his said application and file, and plaintiff agreed and bound himself, in consideration of such price and sum to be paid to him, to sell, transfer, and assign unto the defendant all his rights, titles, and interest in said lands acquired by said application and file. In short, it was provided that if, upon examination, it should be found that, by going forward under the law, the party could secure the land, then defendant was to pay said amount to plaintiff for the rights which he had acquired under his application to purchase, and plaintiff was to convey such right, title, and interest to the defendant. At the date of the contract it was not definitely known just how many acres were embraced in the applications, and the contract provides for the payment of 90 per cent. of the estimated quantity, and this payment was to be made on or before the 15th day of November, 1882. It was further provided therein that, upon the completion of the surveys and field notes, the number of acres embraced in said lands so sold and transferred by the plaintiff to the defendant should be ascertained, and, if the said 90 per centum to be paid by the defendant should not amount to the full purchase price of 25 cents per acre, then the deficit should be paid at once in cash by the defendant to the plaintiff in the city of Dallas or Austin, as the plaintiff might prefer.

Under the contract known as "Exhibit N," the plaintiff, for the considerations therein named, agreed to have the lands surveyed and field notes returned, etc., as required by law. In reference to this contract, known as "Exhibit N," the plaintiff cannot recover of defendant any damages because of a breach, or supposed breach, thereof, and you are instructed accordingly. You may, however, look to that contract, in connection with the evidence, to determine the exact number of surveys of land which are embraced in plaintiff's two applications. On this point the evidence from the land office clearly shows that 1,813 surveys of 640 acres each were made under plaintiff's two applications, and you are so instructed. Of the 1,813 surveys, plaintiff claims nothing as to 25 thereof, which must be deducted, leaving involved in the controversy 1,788 surveys of 640 acres each, or 1,144,320 acres.

The legislature of this state passed the act before referred to, of the 14th of July, 1879, by which the state put upon the market lands which had been reserved from location and sale, including those known as the "Pacific Reservation." This reservation embraced lands in El Paso county which were covered by the plaintiff's applications and surveys. The sections of said act which bear upon the questions in hand are the following:

"Sec. 2. That any person, firm or corporation, desiring to purchase any of the unappropriated lands herein set apart and reserved for sale, may do so by

causing the tract or tracts which such person, firm or corporation desire to purchase to be surveyed by the authorized public surveyor of the county or district in which said land is situated.

"Sec. 3. It shall be the duty of the surveyor, to whom application is made by responsible parties, to survey the lands designated in said application within three months from the date thereof, and within sixty days after said survey, to certify to, record and map the field notes of said survey; and he shall also, within the said sixty days, return to and file the same in the general land office, as required by law in other cases.

"Sec. 4. Surveyors shall be entitled to receive from applicants for the purchase of lands under the authority of this act all legal surveyor's fees for work done by them.

"Sec. 5. Within sixty days after the return to and filing in the general land office of the surveyor's certificate, map and field notes of the land desired to be purchased, it shall be the right of the person, firm or corporation who has had the same surveyed to pay or cause to be paid into the treasury of the state the purchase money therefor at the rate of fifty cents per acre, and upon the presentation to the commissioner of the general land office of the receipt of the state treasurer for such purchase money, said commissioner shall issue to said person, firm or corporation a patent for the tract or tracts of land so surveyed and paid for."

The two applications of plaintiff for the purchase of the land, filed in the surveyor's office of El Paso county, as before stated, are a sufficient compliance with the law of 1879 to constitute them valid applications. They were regularly made and filed in such manner as, under the terms of said law, would have entitled plaintiff to become the purchaser from the state of Texas of the lands embraced therein, had other provisions of the law been complied with in reference to making surveys, returning field notes, etc., paying patent and other fees and the 50 cents per acre required by the act. The certificate of the commissioner of the general land office shows that on the 8th day of January, 1883, plaintiff filed in the land office the field notes of 1,813 surveys of 640 acres each, and it is further shown that a map of said surveys was duly filed in the general land office. The certificate of the commissioner further shows that the surveys made for plaintiff were made beginning on the 20th day of October, 1882, and ending on the 9th day of November, 1882. It further appears from said certificate that all of said surveys were made on and prior to November 1, 1882, except blocks G, H, I, and J, embracing in the aggregate 98 sections, which were surveyed after November 1st, but prior to the 15th day of November, 1882. Hence it follows that all the lands were surveyed prior to the 15th day of November, the date provided in the contract for the payment of the 90 per cent. by defendant and the execution of transfers by plaintiff.

You observe, from reading the law, that the surveyor was required to make the surveys upon application by responsible parties. The question of the responsibility of the plaintiff, when he applied to have the surveys made, was one to be determined by the surveyor who surveyed the lands, and the presumption would be conclusive, in the absence of testimony to the contrary, that the plaintiff was such responsible person.

You are further instructed that the right to purchase the lands mentioned, which right the plaintiff acquired by virtue of his appli-

cations as set forth in the contract and shown by the evidence, was a valuable right, and one which could be lawfully assigned.

If, under the foregoing charge and the evidence in the case, you conclude that the contracts were executed in such manner as to be binding upon the defendant, then you will determine, from all the facts and circumstances in evidence, whether the plaintiff has in good faith performed all things required of him by said contract marked "Exhibit M," and whether he stood ready on the 15th day of November, 1882, to execute transfers to defendant of his right, title, and interest in and to said 1,788 surveys embraced in his two applications. You will further look to the evidence to determine whether the defendant has performed his part of said contract marked "Exhibit M," as by its terms prescribed, and has, in accordance therewith, paid to the plaintiff the amount of money which he thereby agreed to pay.

If, upon consideration of the testimony, you find that plaintiff has in good faith performed his part of said contract marked "Exhibit M," and that the defendant has failed to comply with his part thereof by declining to pay plaintiff as provided therein, then it would be your duty to return a verdict in favor of the plaintiff for such amount of actual damages as you find from the testimony he has sustained by reason of the breach of said contract on the part of the defendant. As before stated, there remain for your consideration only 1,788 surveys of 640 acres each, containing in the aggregate 1,144,320 acres of land. The plaintiff claims that he is entitled to damages at the rate of 25 cents per acre on said 1,144,320 acres, as he contends that defendant agreed to pay him 25 cents per acre for his right, title, and interest in and to the lands embraced within his applications.

Upon this point it was said by the supreme court, when this case was recently before it, that—

"On the 15th of November he (the plaintiff) possessed all the right to the land which he ever possessed, and, assuming that the defendant then failed to make the payment which he had agreed to make, all the damages suffered by the plaintiff was the difference between the value of the right, as stipulated to be paid, and the amount which could then have been obtained on its sale." 12 Sup. Ct. Rep. 935.

Further on, the court uses this language:

"The measure of damages must be the difference between the contract price and the salable value of the right when payment was to be made."

If anything could have been obtained from the sale of that right, if you hold that the contract was binding upon the defendant, it was the duty of the plaintiff to make the sale when the defendant defaulted in his contract, and thus to have subjected him to as little loss as practicable. You will therefore look to all the evidence in the case to determine the salable value of plaintiff's right on the 15th of November, 1882. If you conclude, from the consideration of all the facts and circumstances in evidence, that at said date said right had no salable value,—in other words, that it was completely and absolutely worthless,—then the measure of damages would be 25 cents per acre on the 1,144,320 acres.

If, however, you find, from the testimony, that such right did have, on said 15th of November, 1882, a salable value, then you will determine what that salable value was, and the measure of damages would be the difference between the contract price and the salable value of the right at that date.

If you find a verdict in favor of the plaintiff for any amount of damages, you will award him interest thereon at the rate of 8 per cent. per annum from said 15th day of November, 1882, to the present time. If, under the evidence and the foregoing charge, your finding be in favor of the plaintiff, you will return a verdict in the following form:

"We, the jury, find for the plaintiff, and assess his damages as follows: (1) Principal amount, ———. (2) Interest at the rate of 8 per cent. per annum from Nov. 15, 1882, to the present time ———. Total amount of damages, ———."

You, gentlemen, to fill up the blanks with the amount of damages and interest found, and have the verdict signed by your foreman.

If, however, your verdict be in favor of the defendant, you will simply say, "We, the jury, find for the defendant."

You are the exclusive judges of the credibility of the witnesses and of the weight to be given their testimony, and you are authorized to predicate your finding upon a preponderance of the evidence.

The case, gentlemen of the jury, is now in your hands. You will take it, and render such verdict as may be just and right, in view of the evidence and the instructions of the court.